CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

SEP 19 2008

JOHN F CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| WANDA F. BARR, | Case No. 5:07cv00088 |
|       *Plaintiff*, | **REPORT AND** |
| v. | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | By:    Hon. James G. Welsh |
| Commissioner of Social Security, |            U. S. Magistrate Judge |
|       *Defendant*. | |

The plaintiff, Wanda F. Barr, brings this action pursuant to 42 U.S.C. § 1383(c)(3) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for a period of disability insurance benefits under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on December 19, 2007, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered December 20, 2007, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On appeal, the plaintiff's basic contention is that the Administrative Law Judge ("ALJ") erred by failing to give the required decisional weight to her longitudinal record of treatment for a pain

syndrome by a primary care physician (Dr. Joseph McNamara), by a pain management specialist (Dr. John Sherry), and by a neurologist (Dr. Glenn Deputy). In his brief, the Commissioner contends that this argument is nothing more than "a request for the court to re-weigh the evidence." No written request was made for oral argument.[1]

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's final decision denying benefits.

I.   **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of disability insurance benefits. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws*

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

2

Case 5:07-cv-00088-SGW-JGW   Document 17   Filed 09/19/08   Page 2 of 15   Pageid#: 55

v. *Celebrezze*, 368 F.2${}^d$ 640, 642 (4${}^{th}$ Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3${}^d$ at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3${}^d$ 203, 208 (4${}^{th}$ Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

Alleging a December 14, 2002 disability onset date, the record shows that the plaintiff protectively filed her application seeking a period of disability and disability insurance benefits on May 26, 2004. (R.13,48,51,90.) In connection with her application she stated that she became disabled due to pain in her back, pain and weakness in all upper and lower extremities, depression, kidney problems, and "spasticity." (R.57,70-71,89.)

After her application was denied, both initially and on reconsideration, a hearing was held on August 18, 2006 before an ALJ. (R.13,23-43,435.) The plaintiff was present, testified, and was represented by counsel. (R.13,20-21,435,440-463.) Also present was Bonnie Martindale, who testified as a vocational witness. (R.13,21-22,435,464-471.)

Utilizing the agency's five-step sequential decision-making process, the ALJ concluded that

3

the plaintiff retained the functional ability to perform a range of "light-to-sedentary work activity,"[2] including her past relevant work as a front office cashier and as a supervisor food checker.[3] (R.19-21.) After her claim was denied by written decision dated November 24, 2006, the plaintiff requested administrative review. (R.9-22) Her request was denied (R.5-8), and the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

III.  **Facts and Analysis**

The plaintiff was born in 1967 and was thirty-nine years of age at the time of the administrative hearing.[4] (R.48,440.) Her education included high school and one year of college. (R.440.) Before she stopped working in December 2002 she had been employed by Food Lion, a regional retail grocery chain; during which time her past relevant work experience included jobs as a front office cashier, supervisor food checker and cashier. (R.21,90-91,96,99,440,444-450,458-459.)

Covering the period from May 2002 through June 2006, the plaintiff's extensive medical record shows that she sought treatment for a number of both transient and chronic medical complaints. She was seen and treated for an ovarian cyst (R.102-104,107-117,195-199,323-332),

---

[2] Light-to-sedentary work activity is defined in the decision of the ALJ as the ability to "lift or carry 10 pounds frequently, stand or walk at least four hours in an 8-hour workday, and sit 6-8 hours in an 8-hour workday." (R.19.)

[3] The agency's sequential decisional process is outlined in detail in 20 C.F.R. § 404.1520.

[4] At this age the plaintiff is classified as a *"younger person,"* and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

4

a sebaceous right breast abscess (R.144, 187-192), a urinary tract infection with related ureteral stones and placement of a left ureteral stent placement (R.118-143,145-156,185-186,194, 312-320, 450-452), abnormal vaginal bleeding (R.157-165,168-175,192-193,291,294), a left kidney laceration (R.307-310), a bacterial infection (R.280), flu, flu-like or cold symptoms (R.280,293,295, 321-322,333,334), left shoulder pain associated with "a lot of lifting at work" (R.333), flank pain (R.295-296), right wrist pain (R.253-254), chest pain (R.389), a foreign body in her right ear (R.284), persistent headache (R.336), fatigue and other depressive symptoms (R.302-305,311), chronic lumbar pain and lumbrosacral radiculopathy (R.194,200-224,269-278,295,303-306,339-375,379-390,420-431,433-434), acid reflux (R.157,166-167,302,305), morbid obesity (R.300-303), and complaints of pain, weakness, numbness and/or swelling in various extremities (R.225-236,262-268, 295,297-300,380-390).

Throughout this period, beginning with her development of ureteral stones and placement of a ureteral stent in December 2002, the plaintiff continued to voice diffuse complaints of chronic pain, weakness and discomfort. An objective medical basis for these complaints, however, was never established by a treating source, despite urologic, neurologic and pain management referrals by Dr. Joseph McNamara, her primary care physician.

Following the complete resolution of her kidney-ureteral stone problems in 2003, the urologist, Dr. Craig Sease, was unable clinically to find any cognizable medical basis for the plaintiff's continued complaints of musculoskeletal and flank pain (R.175-177), and a spinal MRI study done at his request also disclosed "no evidence" of any disc disease (R.178-179).

Based on laboratory results which suggested no inflammatory myopathy, an "unremarkable" lower extremity EMG, a brain MRI which demonstrated no significant findings and his clinical examination, the neurologist, Dr. Glenn Deputy, found "no significant" neurologic basis for the plaintiff's generalized complaints of pain and weakness. (*See* R.233-234,384-390.)

Describing her condition as a "diffuse myalgia of uncertain etiology," the pain treatment records of Dr. John Sherry for the period from July 2003 through June 2006 record the absence of any loss of lower extremity strength, a normal gait and station, a normal affect, and no other objective medical basis for her complaints. (R.200-224,337-375,419-431,433-434.) Furthermore, similarly, Dr. McNamara's office records contain multiple radiographic studies documenting the absence of any physiologic abnormality, including normal thoracic and lumbar MRIs in May 2003 and in June 2005 (R.306,282), normal chest X-rays in November 2003 and in August 2005 (R.292,281), normal cervical X-rays in September 2003 (R.297-299), a normal mammogram in March 2004 (R.288), and normal X-rays of both knees in May 2005 (R.264).

Despite the total absence of any medically significant clinical or laboratory studies and based solely on the persistence of her subjective complaints, Dr. McNamara in March 2004 concluded that the plaintiff "has been on total disability since December 15, 2002." (R.285-287.) Twenty months later and for the same reason, Dr. Sherry similarly opined that the plaintiff's "overall condition" rendered her "disabled," although he also acknowledged at the same time that he had earlier assessed her to have the functional ability to perform sedentary work. (R.429; *see* R.460-461.)

6

In August 2005, Dr. Deputy likewise opined that the plaintiff was "totally disabled" due to ongoing pain and muscle dysfunction. (R.379, 381.) This conclusory opinion by Dr. Deputy, however, was explicitly contradicted by his acknowledgment that neither his neurological work-up nor the MRI results suggested any structural basis for the plaintiff's diffuse complaints (R.376), and it was implicitly contradicted by his refusal to question or comment on the results of the March 2005 consultive examination and neurological evaluation by Dr. Chris Newell. (R.377).

Lumbar lumbosacral X-rays taken in connection with Dr. Newell's consultive examination were completely normal. (R.253-254.) On examination, Dr. Newell found the plaintiff to exhibit multiple painful trigger points, slightly increased reflexes on the right side, and some diffusely diminished motor strength attributable to her trigger point pain and generalized deconditioning. (R.257,279.) Although the plaintiff mentioned having as history of spasticity (R.258), Dr. Newell found "no spasticity in either the upper or lower extremities." (R.257.) He found the plaintiff to be alert, oriented, to have a normal mood and affect, and to demonstrate a "normal mental status." (R.257.) He noted that she appeared to sit comfortably and to walk with a "mild" right-sided limp for which the use of a cane was not medically indicated. (R.257,259,279.) The remainder of his examination was also unremarkable (R.257-258).

Based on the X-ray results, his clinical findings and the plaintiff's medication regime (pain relievers and muscle relaxants), Dr. Newell concluded that the plaintiff's medical condition was consistent with a fibromyalgia syndrome; however, he declined to make this a final diagnosis without reviewing the treatment notes of Dr. McNamara and Dr. Deputy. (R.255-258.) Exertionally, Dr.

7

Case 5:07-cv-00088-SGW-JGW   Document 17   Filed 09/19/08   Page 7 of 15   Pageid#: 60

Newell concluded that the plaintiff retained the ability to perform a range of light-to-sedentary work requiring an ability to lift and/or carry no more than ten pounds, to sit six to eight hours during a workday, and to stand and/or walk as much as four hours during a workday. (R.258.)

Also as part of the state agency's development of the administrative record in this case the plaintiff's medical records were reviewed by four state agency consultants, two psychologists and two physicians.

Both psychologists concluded that the plaintiff's depression was not severe. (R.240-252, 398-410.) They noted that she had required no psychotherapy referral, that her mild symptoms were pharmacologically controlled by her primary care physician, that she had exhibited no Listing 12.04 affective disorder criteria, and from a mental health perspective that she was functionally able to engage in competitive work activity. (*Id.*)

Based on their review of the plaintiff's medical records and her description of her daily activities, both in-house medical consultants concluded that the plaintiff retained the functional capacity to perform light work activity [5] with a ten pound push/pull limitation. (R.391-397.) In making this written assessment, extensive references were made to the physical examination results, the multiple negative diagnostic studies, and the conservative treatment record. (*Id.*)

---

[5] As defined in the applicable agency regulations, light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

*Inter alia*, at the administrative hearing the plaintiff testified that she had worked for Food Lion for seventeen years before she developed a "really bad" kidney stone. (R.444,450.) At the time she stopped working in December 2002, her job duties included customer service, supervision of cashiers on the shift, counting till monies, and preparation of weekly work schedules. (R.445-450.) According to the plaintiff, her pain never got better and has in fact gotten worse over time.[6] (R.451-454.) She stated that her back and legs hurt constantly; she has muscle spasms "all the time;" she has trouble sleeping; she is chronically tired; the right side of her body is "hypersensitive;" she spends most of the day lying on the couch, and her disabled husband and teenage son have to do most of the shopping and housework. (R.450-455,458.) In an effort to control her pain, she takes medications, including Methadone and Zanaflex, prescribed by Dr. Sherry, and she has received Botox injections from Dr. Deputy in the past. (R.452-453.)

Bonnie Martindale, a vocational witness, testified that the plaintiff's former duties at Food Lion included work as a bagger (exertionally medium and unskilled), cashier (exertionally light and semi-skilled), front office cashier (exertionally sedentary and skilled), supervisory food checker (exertionally light and skilled), and customer service manager (exertionally medium-to-light and skilled). (R.465-467.) Considering a person of the plaintiff's age, education, work experience, an ability to lift and/or carry ten pounds regularly, and ability to stand and/or walk for four hours during a workday, an ability to sit for six hours during a workday and an ability to make only occasional

---

[6] On a scale of one to ten, at the hearing the plaintiff described her level of pain to range "from three or four" on a good day to "plenty of times it's been twelve" on bad days. (R.453-454.)

postural changes,[7] Ms. Martindale testified that as generally performed in the national economy such a hypothetical individual would be able to perform the plaintiff's past work as a front office cashier or as supervisor food checker, and such an individual could alternatively perform a significant number of other light-to-sedentary jobs, such as an office clerk. (R.466-471.)

In her brief, the plaintiff contends that the ALJ should have accepted the disability opinions of her treating physicians and should have rejected the contradictory medical findings and functional assessment of Dr. Newell. In reply the Commissioner argues that the plaintiff's contention ignores the summary and conclusory nature of the treating source opinions, ignores the fact that a physician's opinion directed to the ultimate issue is not a medical opinion, and ignores the fact that the ultimate issue of disability is always reserved to the Commissioner.

"Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Under the Act, the burden is on the plaintiff to establish that she cannot work. 42 U.S.C. §§ 423(d)(5) and 1382c(a)(3)(H)(I). *See also Blalock v. Richardson,* 483 F.2$^d$ 773, 774 (4th Cir. 1972). And as the plaintiff argues in her brief, in determining whether an individual is entitled to Social Security disability benefits, special weight is usually accorded to the opinions of the person's treating physician. *See* 20 C.F.R. § 404.1527(d)(2).

---

[7] Postural limitations or restrictions include such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, bending, stooping, crouching, or crawling. *See* e.g., Social Security Ruling 96-9p.

10

Although this treating physician rule generally requires greater weight to be accorded the statements and opinions of a treating physician, the rule does not require in all instances that such statements and opinions be given controlling weight. *See Campbell v. Bowen,* 800 F.2d 1247, 1250 (4th Cir. 1986). The ALJ may, for example, choose to give less weight to the testimony of a treating physician if there is "persuasive contrary evidence." *See Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001); *Foster v. Heckler,* 780 F.2d 1125, 1127 (4th Cir. 1986). In choosing to do so, the ALJ must, however, consider a treating source's opinion concerning the impairment's nature and severity, whether it is supported by medically acceptable clinical and laboratory diagnostic techniques, and whether it is consistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2).

Manifestly, the treating source opinions upon which the plaintiff seeks herein to rely are based on her persistent complaints of significant chronic pain and on a longitudinal record of medical treatment for this syndrome. That record, however, is not the only element of proof required to be considered by the ALJ in the ultimate finding that the plaintiff either has or has not the functional ability to engage in substantial work activity on a regular and sustained basis. He must also "consider the objective medical facts and [the] opinions and diagnoses of . . . examining doctors." *Holler v. Chater,* 1996 U.S. App. LEXIS 10850, *8 (4th Cir. 1996) (citing *McLain v. Schweiker,* 715 F.2d 866, 869 (4th Cir. 1983)).

Given the interrelationship of these bases of proof in this case, it was for the ALJ to resolve any inconsistencies in the medical evidence, and it is not for the court either to re-weight the

11

evidence or to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In his decision, the ALJ outlined the multiple radiographic and other studies which were done and noted the fact that none revealed any significant physical impairment or reason for the plaintiff's reported pain. (R.17-18.) Likewise, he summarized the various treating source records and noted the absence of any physiological abnormality or reason for the plaintiff's chronic pain complaints. (*Id.*) He noted the absence of any specific medical diagnosis by a treating physician (R.17), and he noted that the record contained no functional capacity evaluation suggesting the plaintiff's disability (R.21). He outlined the results of Dr. Newell's "comprehensive" examination, including this consulting doctor's medical findings and assessment of the plaintiff's functional limitations (R.18), and he noted the similarly less than disabling functional assessments of the state agency medical consultants (R.19). While the ALJ discounted the amount of pain claimed by the plaintiff, he recognized that she in fact suffered from a pain syndrome, and he took it, along with her other significant medical problems and limitations, into account in making his determination that she retained the capacity to engage in a range of light-to-sedentary work activity. (R.18-21.)

In light of the significant evidence suggesting that the plaintiff retained the functional ability to work, the ALJ was completely justified in accepting the findings and conclusions of the examining, but non-treating, physician and, likewise, to reject the conclusory opinions of her treating physicians. See 20 C.F.R. § 404.1527(d)(1) and (d)(3)–(4). Furthermore, it was entirely appropriate for the ALJ to rely, at least in part, on the consultive physician's non-disabling assessment of the

12

plaintiff's residual functional capacity. *Id.*

Additionally, as the Commissioner notes in his brief, the ultimate fact in issue in this case — whether the plaintiff is or is not able to engage in substantial gainful work activity — cannot be appropriately resolved in her favor, as the plaintiff contends, solely on the basis of medical opinions speaking to this ultimate fact. Such medically unsupported opinion evidence, while it may not be ignored, "[is] never entitled to controlling weight or special significance. SSR 96-5p. That determination is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2); SSR 96-5p.

On review, therefore, the ALJ's decision to "reject" the conclusory treating physicians' opinions is supported by substantial evidence. In effect, the plaintiff's argument to the contrary is simply a request for the court to re-weigh the evidence and substitute its judgment for that of the Commissioner. On review it is also evident that the ALJ properly considered all of the objective and subjective evidence in reaching his conclusion that the plaintiff had failed to establish her disability within the meaning of the Act.

The decision to affirm the Commissioner's final decision in this case does not suggest that the plaintiff is free of pain and other subjective discomfort. The objective medical record, however, simply fails to document the existence of any condition which would reasonably be expected to result in a totally disabling condition.

IV. **Proposed Findings of Fact**

13

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The Commissioner's final decision gave the requisite consideration and weight to the treating source medical opinions, including, but not limited to those of Drs. Deputy Sherry and McNamara;

3. The Commissioner's final decision gave appropriate consideration and evidentiary weight to the consultive examination findings and conclusions of Dr. Newell;

4. The ALJ's decision to reject the conclusory opinions of Drs. Sherry, Deputy and McNamra that the plaintiff was "disabled" is supported by substantial evidence;

5. The ALJ's assessment of the plaintiff's residual functional abilities is supported by substantial evidence;

6. Substantial evidence in the record supports the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform a range of light-to-sedentary work activity;

7. The plaintiff has not met her burden of proving disability; and

8. The final decision of the Commissioner should be affirmed.

## V. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

14

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 19th day of September 2008.

s/ *James G. Welsh*
United States Magistrate Judge